**SIGNED this 6th day of January, 2012**

_Shelley D. Rucker_
_____
Shelley D. Rucker
**UNITED STATES BANKRUPTCY JUDGE**

_____


UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TENNESSEE
SOUTHERN DIVISION


In re:                                                    No. 11-13016
                                                          Chapter 7
BRETT P. MUELLER &
JESSICA STARR MUELLER,

            Debtors;



FIA CARD SERVICES, N.A. (f.k.a. MBNA
AMERICA BANK, N.A and BANK OF
AMERICA) and DISCOVER BANK,
ISSUER OF THE DISCOVER CARD

            Plaintiff,

v                                                          Adversary Proceeding
                                                           No. 11-1126


BRETT P. MUELLER,

            Defendant.

## MEMORANDUM

Plaintiffs FIA Card Services, N.A. and Discover Bank (collectively "Plaintiffs") brought this adversary proceeding against the defendant debtor Brett Mueller ("Defendant" or "Debtor") alleging that the Debtor obtained cash advances and received extensions of credit from them with no intention to repay the debts in violation of 11 U.S.C. § 523(a)(2)(A). [Doc. No. 1, Complaint].  The Debtor moved to dismiss the Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(6), as applied to bankruptcy proceedings pursuant to Fed. R. Bankr. P. 7012(b). [Doc. No. 8]. The court denied the Debtor's motion without prejudice and allowed the Plaintiffs to file an amended complaint. [Doc. Nos. 13, 14].

On November 28, 2011 the Plaintiffs filed an amended complaint. [Doc. No. 18 ("Amended Complaint")]. The Debtor filed an answer to the Amended Complaint and a motion to dismiss the Amended Complaint on December 9, 2011. [Doc. Nos. 21, 23]. The Debtor also filed a motion for sanctions pursuant to Fed. R. Bankr. P. 9011 and Fed. R. Civ. P. 11. [Doc. No. 24]. This court has issued an order setting the motion for sanctions for a hearing and granting the Debtor's request to extend the protective order until after the court's ruling on the second motion to dismiss. [Doc. No. 27].

### I.      Background

The Debtor filed a voluntary Chapter 7 bankruptcy petition on June 30, 2011. [Bankr. Case No. 11-13016, Doc. No. 1]. Plaintiffs assert that the Defendant incurred total charges and cash advances on his accounts with FIA Card Services and Discover Bank that totaled $16,794.77 as of June 3, 2011, the date the debtors filed their Chapter 7 bankruptcy.  Amended Complaint, ¶ 7. They assert that between December 3, 2010 and April 12, 2011 the Defendant incurred $3,300 in cash advance and/or convenience check charges on his FIA Card Services account.  *Id.* at ¶ 8. They further contend that there were thirty-nine charges for overdraft protection or "charges [that] were incurred when Defendant used another account that had

insufficient funds and pulled the overdraft protection from this account." *Id.* They contend that

some of the charges were incurred within the presumption period of 11 U.S.C. § 523(a)(2)(C).

*Id.*

With respect to the Debtor's Discover credit card, the Plaintiffs assert that the Defendant

incurred $6,000 in cash advance or convenience check charges between January 28, 2011 and

January 29, 2011.  Amended Complaint, ¶ 10.

The Plaintiffs assert that the Defendant's bankruptcy schedules reflected $90,262.68 of

unsecured debt, of which $85,121.35 was credit card debt incurred on six different credit cards

that were actively used in early 2011. Amended Complaint, ¶ 12. The Amended Complaint

contends that the Debtor's average monthly budget was $129.70 "without including service of

any credit card debt." *Id.* at ¶ 13. It further notes that servicing the Debtor's credit card debt with

minimum monthly payments would require the Debtor's monthly budget to be negative

$2,683.34. The Plaintiffs assert that the Debtor's credit card debt was 2.42 times his year to

date of filing gross income. *Id.* at ¶ 20.

The Plaintiffs allege in the Amended Complaint that the Defendant must have engaged

in a credit card "kiting" scheme because he made payments to the Plaintiffs in the amount of

$466 and $603 which must have come from other credit cards due to his alleged negative

monthly income. They contend that "[p]ayments on Defendant's six active credit cards during

2011 to the date of Filing could have been made only from, or by the use of, other credit cards

in a credit card kiting scheme which conceal from Defendant's creditors, including Plaintiff, the

true financial circumstances." Amended Complaint, ¶ 22. The Amended Complaint states that

the Debtor's credit card accounts were in "current" status "because of the payments made

through credit card kiting." *Id.* at ¶ 23. It further alleges that:

> By incurring charges in accordance with the contract and making two minimum
> payments since the incurrance of the charges, Defendant represented that
> Defendant would repay the charges incurred and abide by the terms of the

contract.

Defendant knew based on the negative income each month as stated in the statements and schedules that Defendant did not have the ability to comply with the terms of the loan agreement but continued to incur charges.

Plaintiff justifiably relied on Defendant's representations made by Defendant in the Account contract and in the actions after incurring the charges and the fact that Defendant had credit available and made regular payments in accordance with the contract.

Plaintiff had no reason to review Defendant's credit report as no extension of credit was requested and Plaintiff had no knowledge of any problems with Defendant's credit. Plaintiff had no reason to be on notice of any defaults with any other creditors of Defendant.

Defendant incurred the debts when Defendant had no ability to repay the debts and/or objective intent to repay them or with utter disregard for Defendant's ability to repay the debt.

Defendant obtained credit extended from Plaintiff by false pretenses, false representations and/or actual fraud.

Amended Complaint, ¶¶ 25-30. The Plaintiffs ask this court to deny the Defendant a discharge of $9,300 of his debt pursuant to 11 U.S.C. § 523(a)(2).

## II.       Standard of Review

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted.  Fed.R.Civ.P. 12(b)(6).  In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court "must read all well-pleaded allegations of the complaint as true."  *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 88 (6th Cir. 1997) (citing *Bower v. Federal Express Corp.*, 96 F.3d 200, 203 (6th Cir. 1996)).  In addition, a court must construe all allegations in the light most favorable to the plaintiff.  *Bower*, 96 F.3d at 203 (citing *Sinay v. Lamson & Sessions*, 948 F.2d 1037, 1039 (6th Cir. 1991)).

The Supreme Court has explained "an accepted pleading standard" that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955,

1969 (2007).  The complaint "must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory."  *Weiner*, 108 F.3d at 88 (citing *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993)).  In *Twombly* the Supreme Court emphasized that:

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, . . . Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

127 S.Ct. at 1964-65 (citations omitted).

### III.    Analysis

This court provided guidance on the law surrounding dischargeability of debts pursuant to 11 U.S.C. § 523(a)(2)(A) in its prior opinion denying without prejudice the Debtor's motion to dismiss. *See* [Doc. No. 13]. Thus, the court will not repeat all of its prior analysis here. 11 U.S.C. § 523(a)(2)(A) prohibits discharges of debt based on "(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; . . ."  11 U.S.C. § 523(a)(2)(A).  The Sixth Circuit has held that to demonstrate nondischargeability pursuant to 11 U.S.C. § 523(a)(2)(A), a creditor must prove four elements:

> (1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of loss.

*Rembert v. AT&T Universal Card Servs., Inc. (In re Rembert)*, 141 F.3d 277, 280-81 (6th Cir. 1998).  A creditor bears the burden of demonstrating these elements by a preponderance of the evidence. *Id.* at 281.

With respect to the first element of "material misrepresentation," courts in this Circuit

have held that "'material misrepresentations' are 'substantial inaccuracies of the type which

would generally affect a lender's or guarantor's decision.'" *Whitaker v. Koenig*, 418 B.R. 265,

271 (E.D. Tenn. 2009) (quoting *Haney v. Copeland (In re Copeland)*, 291 B.R. 740, 761 (Bankr.

E.D. Tenn. 2003)).

Regarding the element of intent, in *In re Rembert* the Sixth Circuit noted that "the proper

inquiry to determine a debtor's fraudulent intent is whether the debtor subjectively intended to

repay the debt." 141 F.3d at 281.  In addition, the Court noted that some courts have reviewed a

series of twelve factors to help determine a debtor's intent to repay a debt.  *Id.* at 282. The

enumerated factors that may help determine state of mind are:

> (1) the length of time between the charges made and the filing of bankruptcy; (2)
> whether or not an attorney has been consulted concerning the filing of
> bankruptcy before the charges were made; (3) the number of charges made; (4)
> the amount of the charges; (5) the financial condition of the debtor at the time the
> charges are made; (6) whether the charges were above the credit limit of the
> account; (7) whether the debtor made multiple charges on the same day; (8)
> whether or not the debtor was employed; (9) the debtor's prospects for
> employment; (10) financial sophistication of the debtor; (11) whether there was a
> sudden change in the debtor's buying habits; and (12) whether the purchases
> were made for luxuries or necessities.

*Id.* at 282 n.3 (citing *Citibank South Dakota, N.A. v. Dougherty (In re Dougherty)*, 84 B.R. 653,

657 (B.A.P. 9th Cir. 1988), *abrogated on other grounds by Grogan*, 498 U.S. 279).  In

determining intent to deceive, courts consider whether "'the totality of the circumstances

'presents a picture of deceptive conduct by the debtor which indicates an intent to deceive the

creditor.'" *Whitaker*, 418 B.R. at 272 (quoting *In re Copeland*, 291 B.R. at 766) (other quotation

omitted).

With respect to the element of justifiable reliance in § 523(a)(2)(A), the Sixth Circuit in *In*

*re Rembert* noted that justifiable reliance is a subjective standard. 141 F.3d at 280, n.2. The

district court in *Whitaker* noted that, with respect to justifiable reliance, creditors "must prove

that they actually relied on [a debtor's] representations and, based upon the facts and

circumstances known to them at the time, that their reliance was justifiable." 418 B.R. at 273

(citing *Haney*, 291 B.R. at 767).

To demonstrate proximate cause, a creditor must prove a "'direct link between the

alleged fraud and the creation of the debt.'" *Whitaker*, 418 B.R. at 274 (quoting *Haney*, 291 B.R.

at 768).

Federal Rule of Civil Procedure 9(b), applicable to bankruptcy adversary proceedings by

Fed. R. Bankr. P. 7009, requires that allegations of fraud must be pled with particularity.  *See*

Fed. R. Civ. P. 9(b).  This requirement includes allegations of fraud made pursuant to 11 U.S.C.

§ 523(a)(2)(A).  *See MBNA America Bank, N.A. v. Henning (In re Henning)*, 309 B.R. 508, 515

(Bankr. W.D. Mich. 2004).  Courts in this Circuit have explained that "'[t]o satisfy Fed.R.Civ.P.

9(b), a plaintiff must at a minimum allege the *time, place and contents of the*

*misrepresentation(s)* upon which he relied.'" *Matter of Dunlevy*, 75 B.R. 914 (Bankr. S.D. Ohio

1987) (quoting *Bender v. Southland Corp.*, 749 F.2d 1205, 1216 (6th Cir. 1984)) (emphasis in

original).

In this case the Amended Complaint alleges substantially more facts than the Plaintiffs'

initial complaint did. The Plaintiffs assert that the Defendant obtained money from them through

a withdrawal or balance transfer, cash advances, or convenience check charges. They have

provided the court with the amount of the Defendant's unsecured debt of $90,262.68 as

represented in his bankruptcy schedules. Of that amount, $85,121.35 was dedicated credit card

debt spread among 6 credit cards.

The Plaintiffs asserted in the Amended Complaint that the Defendant had a negative

monthly net income of $129.70, which was not enough to service the $85,121.35 in credit card

debt by making the minimum monthly payments on each card. The Defendant responds that the

Plaintiffs are misrepresenting the Defendant's income, and that in fact, his bankruptcy

schedules reveal that he has a net monthly income of $1,132.96 and that his estranged spouse

has a net monthly income of negative $129.70. *See* [Bankr. Case No. 11-13016, Doc. No. 1, pp. 18-19].

In their response to the Defendant's motion to dismiss, the Plaintiffs acknowledge that they made an error in calculating the Defendant's net monthly income. *See* [Doc. No. 29]. However, even when viewing the Defendant's corrected total net monthly income of $1,003.26, which includes his and his spouses income, the Defendant would have not have had enough net monthly income to service his total credit card debt of $85,121.35. Assuming a need to make federally required minimum monthly payments of about three percent (3%) of the debt, the Defendant would need to make monthly payments of $2,553.64. He would thus need an additional $1,550.38 to service his credit card debt by making the minimum monthly payments. Although the Plaintiffs made a miscalculation and used a lower number for the Defendant's net monthly income, their point remains a valid one, that the Defendant does not appear to have been earning enough net income to pay for the minimum payments on his credit card.

The court concludes that, based on the facts as alleged in the Amended Complaint, and as clarified in the Plaintiffs' response to the Defendant's second motion to dismiss, that the Plaintiffs have alleged enough facts to "raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1965.

With respect to the first element of a Section 523(a)(2)(A) claim, the Plaintiffs allege that the Defendant obtained $9,300 from the Plaintiffs during the six months preceding his bankruptcy petition, and they allege that the Defendant misrepresented his intention to repay that amount. Under *In re Rembert*, "[t]he use of a credit card represents either an actual or implied intent to repay the debt incurred." 141 F.3d at 281. Although the Defendant disputes the allegation that he did not intend to repay his debts to the Plaintiffs, the Plaintiffs have alleged that the Defendant had $85,121.35 in unsecured credit card debt and that with his net monthly

income, he had no way to service that debt. These alleged facts are enough to raise a right to

relief above speculation with respect to the first element of material misrepresentation.

With respect to the element of fraudulent intent, the Plaintiffs allege that the Defendant

obtained a $6,000 balance transfer within the six-month period prior to filing his bankruptcy

petition. They also assert that had received several charges for overdraft protection on his

MBNA America Bank credit card. He had no liquid assets at the time of filing and personal

property valued at $39,541.68. *See* Amended Complaint, ¶¶ 15, 17. His 2011 year-to-date gross

combined income was $35,240. *Id.* at ¶ 19. The Plaintiffs further note that the Defendant's credit

card debt was 2.42 times his year to date filing income. The Plaintiffs allege that the Defendant

knew, based on his income and the amount of his credit card debt, that he would not be able to

comply with the terms of his credit card agreement.

The court finds that the Plaintiffs have alleged enough of the facts found to be relevant in

*In re Rembert* to raise the allegation of Defendant's fraudulent intent above the level of

speculation. For instance, they allege that the Defendant incurred many of the disputed charges

shortly before filing for bankruptcy, many of the charges were for overdraft protection charges

when the Defendant used another account with insufficient funds. Amended Complaint, ¶ 8. The

Defendant nearly reached his credit limit with the FIA Card Services Credit Card. *Id.* at ¶ 9. The

Plaintiffs have also alleged facts demonstrating that the Defendant's financial condition at the

time he made the charges in question and when he filed bankruptcy were such that he should

have known he had no way to make the minimum monthly payments on his substantial credit

card debt. The facts alleged by the Plaintiffs are enough to state the element of fraudulent

intent. The court realizes that the facts as demonstrated at trial or following discovery may paint

a very different picture than the one described by the Plaintiffs; however, at this stage of the

litigation the Plaintiffs have alleged enough facts to open the doors to discovery.

With respect to the element of justifiable reliance, the Plaintiffs allege that they had no

reason to suspect that the Defendant would not make his credit card payments because he made payments on both credit card accounts. Amended Complaint, ¶ 21. The Plaintiffs assert that they "justifiably relied on Defendant's representations made by Defendant in the Account contract and in the actions after incurring the charges and the fact that Defendant had credit available and made regular payments in accordance with the contract." *Id.* at ¶ 27. This allegation is sufficient to meet the element of justifiable reliance. In *Field v. Mans* the Supreme Court made clear that "'[i]t is only where, under the circumstances, the facts should be apparent to one of [the creditor's] knowledge and intelligence from a cursory glance, or he has discovered something which should serve as a warning that he is being deceived, that he is required to make an investigation of his own.'" 516 U.S. 59, 71, 116 S.Ct. 437 (1995) (quoting W. Prosser, Law of Torts, § 108, p. 718 (4th ed. 1971)). The Plaintiffs were entitled to rely on the Defendant's credit card agreement and his subsequent payments to them and have sufficiently alleged justifiable reliance in the Amended Complaint.

The Plaintiffs have also sufficiently alleged the element of proximate cause of loss by asserting that the Defendant has failed to pay $9,300 in credit card debt that he owes them. The Plaintiffs have further alleged the time, place and contents of the Defendant's credit card transactions to satisfy the requirements of fraud under Rule 9 and Fed. R. Bankr. P. 7009. Therefore, the court concludes that the Amended Complaint asserts facts that are sufficient to withstand the Defendant's second motion to dismiss.

The court will DENY the Defendant's motion to dismiss. However, the court also concludes that it will use its discretion to manage the discovery process in this case to prevent the Plaintiffs from seeking burdensome and unduly costly discovery from the Defendant. *See e.g. Polec v. Northwest Airlines, Inc. (In re Air Crash Disaster)*, 86 F.3d 498, 516 (6th Cir. 1996) (superseded by statute on other grounds as explained by *Piamba Cortes v. American Airlines, Inc.*, 177 F.3d 1272 (11th Cir. 1999)).

## IV.      Conclusion

For the reasons stated *supra*, the court concludes that it will DENY the Defendant's
second motion to dismiss. The court will also manage the amount of discovery that the Plaintiffs
may seek from the Defendant to keep the costs of litigation from becoming unduly burdensome
for the Defendant.

A separate order will enter.

# # #